IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:16-cr-00428-AA-1 |
| Plaintiff, | **OPINION AND ORDER** |
| vs. | |
| ERIC NATHANIEL AGEE, | |
| Defendant. | |

AIKEN, District Judge:

Before the Court is defendant Eric Nathaniel Agee's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Docs. 132, 136, 137.[1] The Court held oral argument on the motion on February 26, 2021, and denied the motion on the record for the following reasons. Doc. 143.

## STANDARDS

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25

---

[1] Defendant initially filed this motion *pro se*. Doc. 132. After the Court appointed counsel, doc. 133, defendant filed a supplemental motion through counsel, docs. 136, 137.

Page 1 – OPINION AND ORDER

(2010). Compassionate release under § 3582(c)(1)(A) provides an exception in rare cases. With the passage of the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (Dec. 21, 2018), Congress authorized courts to modify a defendant's sentence on a motion for compassionate release by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that two conditions are met: (1) that "[e]xtraordinary and compelling reasons warrant such a reduction" and (2) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." In making that determination, courts must "consider[] the factors set forth in [18 U.S.C.] § 3553(a) to the extent applicable[.]" 18 U.S.C. § 3582(c)(1)(A).

The relevant policy statement is found in the United States Sentencing Guidelines, § 1B1.13. The policy statement identifies four categories of extraordinary and compelling reasons: (A) the medical condition of the defendant, including "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" (B) the age of the defendant; (C) family circumstances; and (D) extraordinary and compelling reasons "other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G.

§ 1B1.13 cmt. 1(A)–(D).[2] The policy statement also requires the court to find that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).

## DISCUSSION

In August 2017, defendant pleaded guilty to possession with intent to distribute 50 grams or more of a mixture containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and use of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Doc. 40. In February 2018, defendant was sentenced to 180 months' imprisonment based on the parties' joint recommendation. Doc. 58. After defendant filed a motion to vacate or correct his sentence under 28 U.S.C. § 2255, doc. 64, the government discovered that, it had told the Court at sentencing that the possession with intent to distribute conviction carried a 10-year mandatory minimum sentence, rather than a five-year one and agreed that defendant needed to be resentenced, docs. 110, 118. In September 2020, the Court resentenced defendant to 120-months' imprisonment and four years' supervised release. Doc. 130. Defendant is serving his sentence at FCI Mendota and has a projected release date of October 5, 2025.

---

[2] Although the policy statement limits the fourth category to other reasons "[a]s determined by the Director of the Bureau of Prisons," the Court follows the majority of federal courts that "have found that the most natural reading of the amended § 3582(c) and 28 U.S.C. § 994(t) is that the district assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." *United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at * 2 (D. Kan. Mar. 11, 2020); *see also United States v. Joling*, No. 6:15-cr-00113-AA, 2020 WL 1903280, at *3 (D. Or. Apr. 17, 2020).

Page 3 – OPINION AND ORDER

Defendant submitted a request for compassionate release to the warden of FCI Mendota at some point before filing his *pro se* motion with his Court on December 23, 2020.³ Doc. 132 Ex. 1.  More than 30 days have elapsed since that motion was filed, and the government does not challenge the motion on exhaustion grounds.

Defendant argues that the COVID-19 outbreak at FCI Mendota, coupled with his medical conditions and desire to provide support for his grandmother and other family and to complete his GED, present extraordinary and compelling reasons for his release.  Defendant is 42 years old, with Hepatitis C and a history of smoking, bronchitis, and several bouts of pneumonia, and reports that he has "breathing problems."  Upon release, he would like to provide support to family members in the Salem, Oregon, area, including his grandmother who is 84 years old and his middle child who is set to be released from state prison in about five months and, like defendant, has struggled with addiction.  Defendant does not have a high school diploma and has been diligently working to complete his GED while incarcerated.  But he has struggled to receive adequate supports for his learning disabilities, and prison conditions during the pandemic have made the process even harder to navigate.

The Centers for Disease Control ("CDC") recognizes that "[a]dults of any age with . . . conditions" that include smoking "are at increased risk of severe illness from" COVID-19.  *See People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION: CORONAVIRUS DISEASE 2019 (COVID-19) (Feb. 22, 2021),

---

³ The request is dated "11/13/2021," which has not yet occurred. Doc. 132 Ex. 1. It was most likely filed 11/13/2020.

Page 4 – OPINION AND ORDER

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 26, 2021).  The CDC also recognizes that adults with chronic liver disease "*might* be at increased risk for severe illness from" COVID-19.  *Id.* (emphasis added).

When defendant filed his motion on December 23, 2020, BOP was reporting five active, confirmed infections among inmates at FCI Mendota and four active, confirmed infections among staff.  *See Facility-Level BOP COVID-19 Trends*, U.S. DEP'T OF JUST. OFF. OF INSPECTOR GEN. (OIG) (updated Feb. 20, 2021), https://experience.arcgis.com/experience/ab22fb4c564e4f4b986e257c685190e8/page/page_2/ (last visited Feb. 26, 2020) (OIG interactive dashboard with data relating to COVID-19 within BOP).  Now, BOP reports no active, confirmed infections among inmates, four among staff, and that 28 inmates and 29 staff are "recovered."  *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Feb. 26, 2021).

On this record, the Court cannot find extraordinary and compelling reasons to reduce defendant's sentence.  Defendant appears to have received adequate care for his Hepatitis C and respiratory infections while in custody.  *See United States v. Valdovinos*, No. 3:18-cr-00497-SI-03, 2020 WL 7711363, at *2 (D. Or. Dec. 29, 2020).  Defendant told BOP Health Services that he was diagnosed with Hepatitis C in 2003.  Doc. 141 Ex. 1 at 7.  Though defendant's medical records indicate that he had a detectable viral load in November 2018, doc. 137 ex. 1 at 1, he received treatment in October 2019, doc. 141 ex. 1 at 4, and his viral load was undetectable as of January

2020, *id.* at 22.  In April 2018, defendant was diagnosed with bronchitis and received treatment.  Doc. 137 ex. 1 at 2.  At a follow-up exam at the end of April 2019, his lung function appeared normal and he denied any infection-related symptoms.  *Id.*  He also reported a history of "multiple pneumonia but was 'too busy' to have [the] pneumonia vaccine."  *Id.*  His provider appears to have ordered Pneumovax after that exam.  *Id.*  Further, there is no evidence in the record indicating that defendant has liver or lung damage, or reduced functioning in either organ.  Defendant's desire to support his family and to complete his GED, though laudable, are not by themselves "extraordinary" reasons to reduce his sentence.

Moreover, defendant has a projected release date of October 2025 and has served just over half of his 120-month mandatory minimum sentence.  Defendant asserts that post-offense changes in Oregon and federal law would place him in a better position in plea negotiations if he were charged and sentenced today.  But, given the serious nature and circumstances of defendant's underlying offense—he was found with over 300 grams of methamphetamine and a gun while on post-prison supervision for state offenses—the Court cannot find that his sentence is the result of sentencing disparities.  And, in fact, given the seriousness of his offense, reducing defendant's sentence to time-served would undermine the sentencing factors under 18 U.S.C. § 3553(a).

The Court recognizes that defendant has made valuable use of his time while incarcerated, including by completing a 15-week drug treatment program.  At the hearing, defendant read a thoughtful letter to the Court, which emphasized his

commitment to his sobriety, education, and to making a difference for his family and community upon release.  As mentioned at the hearing, the Court is heartened by those commitments, believes that defendant is an excellent candidate for early transfer to community corrections, and looks forward to supporting defendant's goals and transition upon his release.  Although the rare and extraordinary nature of compassionate release constrains the Court's ruling on the present motion, the Court reaffirms the recommendation made in the September 1, 2020 judgment in this case:

> That defendant receive the maximum prerelease time available, to include the maximum time possible in a residential reentry center, in order to allow the defendant sufficient time to establish community treatment resources and address housing and employment needs.

Doc. 130 at 2.

## CONCLUSION

Defendant's Motions to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (docs. 132, 136, 137) are DENIED without prejudice.  As mentioned at the hearing, defendant may file a renewed motion if circumstances change, which the Court will consider on an expedited basis.

IT IS SO ORDERED.

Dated this 26th day of February 2021.

/s/Ann Aiken

Ann Aiken
United States District Judge